CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone: (415) 436-7200
> FAX: (415) 436-7234
> Eli.Cohen@usdoj.gov

Attorneys for United States of America

```
FILED

Jun 07 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:26-mj-70784-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | Hearing Date: June 8, 2026 |
| GERMAN KLARIAN HINOJOSA a/k/a Felipe Gomez Navarrete | Hearing Time: 11:00 a.m. Courtroom:   C, 15th Floor |
| Defendant. | Hon. Sallie Kim |

**INTRODUCTION**

Defendant German Klarian Hinojosa, a/k/a Felipe Gomez Navarrete ("Hinojosa" or the "defendant") has been charged with one count of Bank Burglary, in violation of 18 U.S.C. § 2113(a). Hinojosa's apparent foreign criminal history, lack of ties to this district and the United States generally, apparent connection to an organized transnational criminal operation, and conduct in this case provide at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate. For those reasons and as further explained below, the United States now moves this Court to order Hinojosa detained pending trial in this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Hinojosa's Background and Criminal History

The Federal Bureau of Investigation ("FBI") has information that indicates Hinojosa, a Chilean national in this country without legal status, is part of a sophisticated Transnational Organized Crime ("TOC") group referred to as a South American Theft Group ("SATG").[1]  These groups are known to have ready access to significant financial means, false identification, and different methods of communication and transportation.  The FBI's legal attaché in Chile has informed the government that this particular defendant, identified by full name, date of birth, and identity number, has a criminal history including what appear to be convictions for theft with force in 2004, theft in an inhabited place in 2005, theft in an uninhabited place in 2006, theft in 2008, theft in an uninhabited place in 2008, and theft in an uninhabited place in 2015, and arrests for theft with force in 2006, theft with force in 2010, theft in an inhabited place in 2010, theft in an inhabited place in 2017, and bribery in 2025.  The government has not yet obtained official documents verifying the status of these contacts as convictions and arrests, or any sentences the defendant may have received for any convictions.

### II.    The Instant Matter

On June 1, 2026, at approximately 2:33 a.m., San Francisco Police Department ("SFPD") officers responded to the San Francisco Federal Credit Union ("SFFCU") at 2645 Ocean Avenue in San Francisco to a report of a burglary in progress.  When they arrived, officers saw three Hispanic adult males exiting the rear of the credit union and chased them.  The three men were able to evade police on foot, but one dropped a backpack.  Police later reacquired the location of the three men, at that point in a car, by tracking the movement of the GPS devices hidden in money the men had taken from the credit union.  The car fled, and SFPD chased it for approximately five miles, including on a highway.

---

[1] These groups have become a prominent area of concern for law enforcement recently. Significant cases involving such groups have been brought in at least the Eastern District of Wisconsin, *see* https://www.justice.gov/usao-edwi/pr/homeland-security-task-force-investigation-leads-indictment-four-illegal-aliens-south, the Middle District of Florida, *see* https://www.justice.gov/usao-mdfl/pr/seven-chilean-nationals-charged-following-nationwide-burglaries-several-professional, and Ventura County, California, *see* https://nypost.com/2026/03/01/us-news/chilean-burglary-gang-sparks-outrage-after-filming-3m-jewelry-store-heist/.

UNITED STATES' DETENTION MEMO                 2
3:26-mj-70784-MAG

Eventually the car pulled over and the three men fled on foot, with Hinojosa exiting the driver's seat. SFPD did not apprehend the two passengers, but did catch Hinojosa. When arrested, he had a purported Argentinian driver's license in the name of "Felix Gomez Navarrete."



It was only by searching Hinojosa's FBI number, which is tied to his fingerprints, that the FBI was able to discern his true identity. SFPD recovered the backpack from the SFFCU parking lot, which contained, among other things, multiple pairs of gloves, a respiratory mask, a crowbar, a flashlight, a screwdriver, metal chisels, a metal spark lighter (potentially used for igniting a blowtorch), and a can of spray paint. SFPD also recovered a backpack containing, among other things, a metal spark lighter, a flashlight, an angle grinder, and an abrasive cut wheel, and a garbage bag containing an extension cord and a rotary hammer, from an employee break room at SFFCU. Inside the ATM room at SFFCU, SFPD



recovered two crowbars.  SFPD recovered, among other things, multiple GPS money tracking devices, significant amounts of U.S. currency in a garbage bag and a teller cash dispenser, multiple damaged pieces of a teller cash dispenser, surgical masks, multiple hooded sweatshirts, and gloves from the car in which Hinojosa and his accomplices had fled.  In total, SFPD recovered approximately $134,000 in cash from the vehicle.  SFPD found extensive damage to an ATM, safe, and a teller cash drawer inside the credit union.  Hinojosa and his accomplices cut through the back of an ATM using a blowtorch and spray-painted a surveillance camera in SFFCU to avoid detection.

 

### III.    Procedural History

SFPD arrested Hinojosa on June 1, 2026 and he was scheduled for arraignment in San Francisco Superior Court on June 3, 2026.  On June 2, 2026, this Court authorized a Criminal Complaint charging Hinojosa with one count of Bank Burglary, in violation of 18 U.S.C. § 2113(a).  He made an initial appearance on June 4, 2026 and the government moved for detention.  The government argued that there was sufficient evidence that Hinojosa presented a serious flight risk to entitle it to a detention hearing under 18 U.S.C. § 3142(f)(2)(a), and the Court granted the hearing.  A detention hearing was set before this Court for June 8, 2026.

## LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as

UNITED STATES' DETENTION MEMO                4
3:26-mj-70784-MAG

required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk–the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*.

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol use, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Rules of Evidence do not apply at a detention hearing.  18 U.S.C. § 3142(f)(2)(B).  It is well settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in an offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

Hinojosa's apparent foreign criminal history and apparent connection with a transnational organized crime group, in conjunction with his conduct in this case, as well as lack of ties to the community and the United States more generally, provide at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions cannot reasonably mitigate.  He and two accomplices engaged in a coordinated, sophisticated burglary of a credit union. They spray-painted a surveillance camera to avoid detection and used a blowtorch to cut open an ATM. They were prepared with a panoply of tools to accomplish this task.  When confronted by police, all

three ran, and then engaged in a miles-long car chase with police before running again. Once caught, Hinojosa had a fraudulent Argentinian driver's license.

Pretrial Services' Prebail Report reflects Hinojosa has no ties to this community, having lived most of his life in Chile and "bounced around" homes in San Francisco for "2-3 weeks." Before that, he was in Los Angeles and Mexico. Ultimately, Pretrial Services recommends that Hinojosa be detained as a risk of flight/nonappearance. The Court should accept Pretrial Services' recommendation. This appears to be his first arrest and prosecution in the United States. With no ties to the community, connection to a transnational organized crime group, access to fraudulent identification, and having already fled from police, Hinojosa has the means, proclivity, and incentive to flee. There is no reason for the Court to believe that he will stick around to face federal prosecution.

## CONCLUSION

For the foregoing reasons, there is at least a preponderance of the evidence that Hinojosa presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate. The government respectfully requests that the Court order Hinojosa detained pending trial.

DATED: June 7, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


/s/ Eli J. Cohen
ELI J. COHEN
Assistant United States Attorney